## Cassie L. Johnson

*v.*

## Ernestine F. Argueso and Manuel Argueso.

[Decided May 31st, 1910.]

The evidence in a suit to foreclose a mortgage *held* insufficient to show a contract whereby the mortgagee agreed not to require interest on the debt, or that the possession taken by G., was as agent for the mortgagee.

Heard on bill, answer, replication and proofs in open court.

*Mr. Charles J. Snyder* and *Mr. Charles J. Roe,* for the complainant.

*Mr. Arthur H. Bissell* (with whom was *Mr. Shumway* of the New York bar), for the defendants.

Garrison, V. C.

This is an action to foreclose a mortgage for $2,000, dated April 4th, 1907. It is claimed in the bill that interest is due

on this mortgage from the first semi-annual interest day, which would be October 4th, 1907.

The defence, broadly speaking, is that the complainant' Cassie L. Gillett (Johnson) went into possession of this property as mortgagee in possession under an agreement that she would not call for the interest.

The facts, roughly stated, are that this property belonged at one time to Miss Gillett, and she sold it to Mrs. Argueso and took back some notes and a mortgage, and when the Arguesos had paid something, but still owed nearly $2,000 and owed some other sums outside for other matters, to her, she took this $2,000 mortgage to represent their indebtedness to her.

Throughout the entire transaction she undoubtedly was represented by her father, F. M. Gillett.

The Arguesos entered into possession under their deed, and remained in possession until some time in November, 1907, at which time they became financially involved. The Arguesos seem to have been variously indebted in the neighborhood, and several attachments had been levied against the property—I presume the pressing things were the attachments against the personal property which they had there.

Down to this point there is no dispute between the parties. At this point the relationship between the parties financially was as follows: Mrs. Argueso owed to Miss Gillett $2,000 on this mortgage and six months' interest, which was $60. She owed to Miss Gillett $500, which Miss Gillett had borrowed for her from a banker in New York named Packard, and which debt had been kept alive by successive renewals. Mrs. Argueso also owed to Mr. F. M. Gillett something over $104, of which, however, $20 belonged to the daughter (the complainant), being some interest due on an old mortgage which was merged in the $2,000 indebtedness represented in the new mortgage. That debt had not yet been paid; it had been incurred prior to the making of the mortgage for $2,000 in April of 1907.

There was also a note of $150 which Mrs. Argueso had given to Mr. F. M. Gillett, and which he had had discounted. The intention at the time this note was given was that it should be discounted and used, together with $100 in cash to be furnished

by Mr. Argueso, to pay off one-half of the $500 note which was at the Packards; but since Mr. and Mrs. Argueso never produced the $100 in cash, this $150 note was never used for that purpose, but apparently was used by Mr. Gillett in his own matters, and was subsequently paid off by him.

All of these things are mentioned not by reason of any direct bearing that they have upon the vital question, but because they have been frequently referred to, and I want to state what the proofs show the facts to be concerning them.

What happened after the Arguesos left the property (which is at a place named Belford, near Highlands, New Jersey), is the subject-matter of dispute. It should first, however, be observed that no one pretends that Miss Gillett participated personally in anything that was done, consequently I think it is perfectly clear that she did permit her father practically to represent her interests in this entire business from the beginning to the end.

Mr. Argueso testifies in the following language:

"In November [this would be November of 1907] we had a few interviews. * * * We had conversations about the attachments that had been put on the place. Mr. Gillett told me, 'Mr. Argueso, I think that the interests of my daughter are jeopardized because there are a few attachments put on the place. I know the position that you are in; with your wife sick you cannot go and attend to your business in Belford, and I think I could attend to all the things for all concerned if you allow me to go to the place and sell the stuff that is there outside, such as corn, apples, cows, &c. I will go there. I will sell the whole thing, pay the bills, get a little money for me and I will send the balance to Mrs. Argueso. As to the interest, we will let it run until you are in better circumstances.' "

And again, he says that in January, 1908, he had two interviews with Mr. F. M. Gillett, one in his own office and one in the office of Mr. Shumway, a New York lawyer, who acted for the parties in regard to certain of these matters, and that in these interviews the following took place: He said

"He [meaning Mr. Gillett] had already taken charge of the whole farm for me. He told me, 'Mr. Argueso, don't you worry; I will stay on the place there. These little attachments I think I can fix by selling all the things that are there. I will stay on the place with Miss Gillett, live there, and after you come [back he obviously meant, although he did not say so] everything will be fixed all right. Don't you worry about

the interest, nor about the little money that you owe me as for that note of $150 that you accommodated me with in the Union Trust Bank of Jersey City.' That was the conversation."

Mr. Gillett, on the other hand, testifies that after Mr. Argueso and his wife had left the farm (under the financial stress in which they then were) Mr. Argueso sought him and told him that he was in financial straits, and suggested to Mr. Gillett that he would like Mr. Gillett to go down to the farm and see if he could not straighten matters out for Argueso; that Mr. Gillett was well acquainted with the people, having lived on the farm, and he thought Mr. Gillett could do better for him than he could do for himself; and Mr. Gillett went down there and endeavored to straighten out the affairs of Mr. and Mrs. Argueso.

Mr. Gillett testifies that he went down to the farm on the 10th of November, 1907, and found that affairs were much more complicated than he had been led to believe, and he came up to New York City on Thanksgiving Day, November 28th, 1907, to visit some relatives, and on his way back stopped to see Mr. and Mrs. Argueso at their home on the night of November 28th, and then it was suggested that he should go back and stay there, taking his daughter with him, or having his daughter come and keep house for him, discharging the man who was then on the place, and endeavor to sell the stuff that was there to the best advantage and pay the debts, and endeavor to conclude the negotiations for the sale of the farm to one W. B. Smith, who was negotiating for it. Gillett says it was understood that he was to stay there until Mr. Argueso returned from his trip to Mexico which he was going to take in January and was expected back in five or six weeks. I doubt very much whether this conversation took place in November about the Mexican trip; it seems to me it is much more likely to have taken place in January; and that it was then that it was suggested that he should stay on until Argueso got back from Mexico. I cannot find any intimation that Argueso knew in November that he was going to Mexico. However that may be, there is no contradiction that it was understood that Gillett was to stay there until Argueso got back from Mexico.

Miss Gillett (the mortgagee) went there on the 4th of December, her father having been there since the 10th of November of the year 1907.

This mortgage was begun to be foreclosed in August, 1908.

Mr. Gillett testifies that he sold certain stuff down there; that a good deal of the stuff was sold under the attachments; that he paid some of the debts that were owed by Argueso or his wife, and that he is accountable to them for his stewardship. The contention of the defendant was that he was in possession as agent for his daughter as mortgagee in possession, and must account in that respect; but the real backbone of the defence is that the foreclosure is improper because of the agreement which is set up in the answer that if she was allowed to go into possession the interest would not be demanded. I suppose that what the answer aims to set up is that it was agreed that she should go into possession and should collect her interest out of the rents, issues and profits, and that until she accounts and shows that she did not collect her interest out of the rents, issues and profits she cannot foreclose.

The real difficulty is with the defendants' proof as to what the contract was, or whether there was any contract at all' with Miss Gillett, the mortgagee, or with her father as her agent. Mr. Argueso's own testimony, which I have quoted *in haec verba,* is that the only conversation, when Mr. Gillett went into possession in November, so far as it referred to the interest, was "We will let it run until you are in better circumstances." It is not suggested for one moment by that testimony, or by the testimony of Argueso anywhere, that there was any agreement that if Miss Gillett (leaving out now any question as to whether she was bound by the action of her father, and assuming for the purpose of this decision that she was absolutely bound by it)— there does not seem to·be any charge by Argueso in his testimony that there was any agreement with Mr. Gillett that if Miss Gillett was allowed to go into possession she would not demand her interest, but would get it out of the property. The utmost he says about that is "as to the interest, we will let it run until you are in better circumstances," and, again, in the January conversation, he starts off by saying that Mr. Gillett had taken charge

of the whole farm for him—he says "for me," that is, Argueso;
and then he says that Mr. Gillett told him not to worry about
the interest. I do not find a word of suggestion that the inter-
est was to be paid or taken out of the proceeds of the farm, or
any rents, issues or profits of the farm; and I fail to find any
agreement (assuming now that Mr. Gillett was acting in such a
way and by such authority as to fully bind the daughter). I can-
not find any distinct agreement ever made or ever testified to by
Argueso of that character; and assuredly if he does not testify
to it, the defendants cannot succeed, because there is no one else
that pretends to have made any agreement on the part of the de-
fendants except Mr. Argueso. It is not pretended that Mrs.
Argueso made any agreement, Mr. Argueso having always acted
for her.

The utmost that I think the defendants can argue in this case
is the question of whether the complainant, under all the circum-
stances, has a right to claim the default, because the interest was
not promptly paid.

There are cases in New Jersey, which I shall not stop now to
cite, which have held that where the non-payment of interest by a
mortgagor was occasioned by the conduct of the complainant, the
complainant could not, in equity, insist upon the forfeiture.
Now, there is an arguable question in this case as to whether these
defendants had not reason to believe, by reason of what took
place between them and the agent of the complainant, that they
need not attend to the immediate payment of the interest, and
that no advantage would be taken of them if they did not attend
to its payment when due, but that the complainant was willing to
await certain times or certain conditions until she should insist
upon it. But I am rather inclined to think that, if that is the
position the defendants want to take, they must come in and
tender to the complainant the interest. I do not think they can
say under those circumstances—they certainly could not say
under these circumstances—that an agreement of that descrip-
tion, utterly indefinite in its terms, could be enforced so that the
mortgage never could be foreclosed. That would be absurd.

But I do think, if these cases in New Jersey that I have
glanced at during the trial have not been reversed, that it may

be that a defendant circumstanced as this one was, who had such dealings as this one had had with the complainant's agent, would he justified in saying, when a bill of foreclosure was filed, "No; you cannot foreclose this mortgage for non-payment of interest and declare the principal due, because that would be unjust to me, you having misled me as to the necessity of paying this interest within time, and all that equity will require will be that I shall pay you the interest, and that I now offer to do."

But the defendant does not do that in this case. The defendant squarely says: "I do not owe you any interest. Your interest was satisfied by means of the contract that you made with me." I do not find any proof of any such contract. In fact, I do not find that any such contract was even suggested in the evidence of Argueso. The utmost that he seems to show was that Gillett told him that he would go down there and take care of the attachments, and sell the property, and that they would not press him (or, rather, her, Argueso's wife, the mortgagor) for the interest until the Arguesos were in better circumstances.

The above was the oral deliverance of the court at the conclusion of the trial; the case was then held for briefs, which have since been furnished, and the court has read them and the testimony. After careful consideration and review of the testimony, and the law applicable thereto, I cannot find that these defendants have proven any facts making out a defence. The utmost that they have proven is that Mr. Gillett, as their agent, went into possession of their property, and is, in a proper action, accountable to them for his stewardship. They have not proven that Miss Gillett, the mortgagee, acting for herself or by her agent, made any contract of any kind with them concerning her mortgage or the payment of interest thereon.

The result is that a decree must be advised for the complainant for the principal of the mortgage, with interest and costs.